UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW J. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:10CV02141MLM |
| | ) | |
| WILLIAM BARTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the court is the Motion to Dismiss filed by Defendants William Barton, Paula Moyers, and Scott Jordan (jointly, "Defendants"). Doc. 11. Plaintiff Matthew J. King ("Plaintiff") filed a Response. Doc. 13. Defendants filed a Reply. Doc. 18. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 4.

## LEGAL STANDARD FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." In turn, Rule 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 551 U.S. 89, 93 (2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949

(2009) (citing Twombly, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950 (citing Twombly, 550 U.S. at 556). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949 (quoting Twombly, 550 U.S. at 555); see also Hamilton v. Palm, 621 F.3d 816, 818 (8th Cir. 2010) ("[A]n allegation in any negligence claim that the defendant acted as plaintiff's 'employer' satisfies Rule 8(a)(2)'s notice pleading requirement for this element.") (emphasis omitted).

Further, in regard to a Rule 12(b)(6) motion, the Supreme Court holds:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) . . . see, e.g., . . . Neitzke v. Williams, 490 U.S. 319 327, 109 S. Ct. 1827, 104 L. Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Twombly, 550 U.S. at 555-56; see also Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) ("[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that are merely consistent with such a right.'") (quoting Stalley v. Catholic Health Initiative, 509 F.3d 517, 521 (8th Cir. 2007)).

Additionally, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Twombly, 550 U.S. at 556 (citation omitted). "The issue

2

is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its] claims." Scheuer, 416 U.S. at 236.

In civil rights actions a complaint should be liberally construed when determining whether it has stated a cause of action sufficient to survive a motion to dismiss. Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

**BACKGROUND**

Plaintiff alleges that he is a civilly committed detainee at Southeast Missouri Mental Health Center ("SMMHC"); that he receives treatment through SMMHC's Sex Offender Rehabilitation Treatment Services ("SORTS") program; that Plaintiff is assigned to "Hoctor Four" at the SMMHC-SORTS facility; that Defendant William Barton ("Barton") is Unit Program Supervisor for Hoctor Four; that Defendant Paula Moyers ("Nurse Moyers") is a Licensed Practical Nurse assigned to Hoctor Four; that Defendant Scott Jordan ("Jordan") is Unit Manager of the Hoctor Building at SMMHC-SORTS; that he is suing all Defendants in both their official and individual capacities; and all Defendants are representatives of the State of Missouri and acted under color of State law during all relevant periods. Doc. 1, ¶¶ 1-5.

Plaintiff further alleges that, on or about September 9, 2010, he told Nurse Moyers that he had received "numerous" threats from another Hoctor Four resident, LuJuan Tucker ("Tucker") and that he "would like to be moved from Hoctor Four"; that, on or about that same date, Nurse Moyers told Plaintiff she would present the information given to her by Plaintiff to Barton "before the end of the working day"; that, on or about September 9, 2010, Barton told Nurse Moyers that he would "check with administration about moving Plaintiff [] to another ward"; that, after he did not hear anything by the end of the day on September 9, 2010, Plaintiff submitted a SMMHC-SORTS Team Request, on

September 2010, asking to be moved from Hoctor Four[1]; that Barton denied the Team Request; that, after September 20, 2010, neither Barton or Nurse Moyers spoke to Plaintiff about being moved to another ward; that, on about October 17, 2010, Plaintiff was "physically assaulted" by Tucker and "received injuries to the left side of his nose from the assault"; that on about October 18, 2010, Plaintiff filed a police report regarding the assault; that, between September 9, 2010, and October 17, 2010, Plaintiff received more verbal threats from Tucker and "with each threat he informed Hoctor Four [] staff"; that between these dates neither Barton or Jordan took any action to separate Plaintiff from Tucker; that all Defendants had prior knowledge of the October 17, 2010 assault by Tucker and failed to prevent it; that all Defendants knew that Tucker was, among other things, violent and capable of doing "serious bodily harm to other residents" and that he had "a history of assaultive behavior and that he was known to 'carry out' his threats"; that between September 9 and October 16, 2010, Barton found Tucker guilty on two conduct violations for assaultive behavior toward other residents in Hoctor Four; that Tucker has "displayed assaultive behavior toward staff"; that Defendants "have an obligation to keep Plaintiff [] safe and free from bodily harm and failed to do so, by not protecting him from Tucker"; that, by the conduct described in Plaintiff's Complaint, Defendants have violated Plaintiff's right to Equal Protection under the Fourteenth Amendment and engaged in "unlawful

---

[1] Plaintiff also states in his Response to the Motion to Dismiss that he submitted a Team Request on or about September 9, 2010. Doc. 13 at 4. In regard to Plaintiff's allegation that he submitted a team request that he be moved, Defendants have submitted to the court the following Team Requests submitted by Plaintiff: one dated September 8, 2010, asking that Plaintiff be moved to the Blair housing ward in order to have full use of his privileges; one dated September 9, 2010, asking for a PlayStation videogame system; and one dated September 2010, asking to have the staff address him as "Dr. King." Doc. 12, Ex. A; Doc. 18, Ex. B. The court notes that even though Defendants submitted an affidavit by the custodian of the SMMHC-SORTS Team Requests, the court cannot, pursuant to the pending Motion to Dismiss, consider Defendants' suggestion that Plaintiff did not submit a Team Request asking that he be moved because of Tucker's threats.

4

conduct in violation of Plaintiff['s] [] right to substantive and procedural due process in violation of the 14th Amendment"; that as a proximate result of Defendant's conduct in violation of 42 U.S.C. § 1983, as described in Plaintiff's Complaint, Plaintiff has suffered damages for pain and emotional distress; and that Plaintiff seeks injunctive relief, punitive damages and compensatory relief and other appropriate or equitable relief. Doc. 1, ¶¶ 6-23.

Defendants seek to dismiss Plaintiff's Complaint based on Fed. R. Civ. P. 12(12)(b)(6), in that Plaintiff has failed to state a claim upon which relief can be granted. In particular, Defendants contend that Plaintiff has not asserted a claim against Defendants in their official capacities and that the factual allegations of Plaintiff's Complaint establish that Defendants are entitled to qualified immunity in their individual capacities.

## DISCUSSION

**I.     Claims Against Defendants in their Official Capacities:**

A suit against a government employee in his or her official capacity equates to a suit against the government entity itself. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). An entity "may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional policy or custom of the subdivision." Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)); see also 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .").

Although Plaintiff states that he is suing Defendants in their official capacities, he fails to allege that, when Defendants allegedly violated his constitutional rights, they were implementing or executing

an unconstitutional State/SMMHC policy or that the failure to remove him from Hoctor Four resulted from an official policy or custom. Moreover, Plaintiff alleges only a single act on the part of Defendants, in that they failed to move him from Hoctor Four. A single incident of allegedly unconstitutional conduct cannot form the basis for imposing liability on a governmental entity. Williams v. Mensey, 785 F.2d 631, 636 (8th Cir. 2986) (quoting City of Oklahoma City v. Tuttle, 105 S.Ct. 2427, 2436 (1985) ("'Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'"). Significantly, in his Response to the Motion to Dismiss, Plaintiff acknowledges that the State/SMMHC has a policy "to keep the residents safe from ... one another." Doc. 13 at 2. To the extent Plaintiff seeks money damages based on Defendants' conduct in their official capacities, the Eleventh Amendment precludes such damages. Larson v. Kemper, 414 F.3d 936, 939 (8th Cir. 2005). As such, the court finds that Plaintiff has failed to allege facts which affirmatively and plausibly suggest that he has a cause of action against Defendants in their official capacities. See Twombly, 550 U.S. at 555-56; Gregory, 565 F.3d at 473. The court finds, therefore, that Defendants' Motion to Dismiss should be granted to the extent it seeks dismissal of Plaintiff's claims based on Defendants' acts in their official capacities.

**II.   Qualified Immunity - Legal Framework:**

Under 42 U.S.C. § 1983, qualified immunity protects government officials from suit "when performing discretionary functions unless their conduct violates clearly established law." Nelson v. Shuffman, 603 F.3d 439, 446 (8th Cir. 2010). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go

6

to trial.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1986)). Accordingly, the Supreme Court has "'repeatedly stressed the importance of resolving immunity questions at the earliest possible stage of litigation.'" Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)). This inquiry consists of two steps: first, a determination "whether the facts . . . establish a violation of a constitutional right," and second, "whether the relevant constitutional right was clearly established at the time of the alleged violation." Nelson, 603 F.3d at 446. The court need not approach these inquiries in any particular order. See Pearson, 129 S. Ct. at 818.

Regarding the second step, officials at civil commitment facilities such as SMMHC, like their counterparts in the prison system, are constitutionally required to take reasonable measures to ensure a detainee's safety by protecting him from attacks by other detainees. See Nelson, 603 F.3d at 446. In the civil context, this obligation arises under the Fourteenth Amendment rather than under the Eighth Amendment, the latter of which is applicable to prisoners. Id. at 446 n.3. The Supreme Court has explained that "reckless disregard" is the standard applicable in a Fourteenth Amendment failure-to-protect matter. Thomas v. Booker, 784 F.2d 299, 305 (8th Cir. 1986) (citing Smith v. Wade, 461 U.S. 30 (1983)). Nonetheless, the Eighth Amendment provides guidance in the context of a Fourteenth Amendment failure-to-protect claim. Nelson, 603 F.3d at 446 ("[T]he Fourteenth Amendment provides detainees [in a civil commitment facility such as SMMHC] at least the same level of constitutional protection as the Eighth Amendment does to prisoners."). In fact, the Eighth Circuit has held that use of "the words 'gross negligence,' defined as 'a callous indifference or thoughtless disregard,' and 'egregious failure to protect,' defined as 'a flagrant or remarkably bad failure to protect,'" sufficiently describe the nature of conduct for which officials can be found liable in the

7

Fourteenth Amendment failure-to-protect context. Thomas, 784 F.3d at 305.

Additionally, it is "clearly established . . . that the [E]ighth [A]mendment require[s] prison officials 'to protect prisoners from violence at the hands of other prisoners,'" Young v. Selk, 508 F.3d 868, 875 (8th Cir. 2007) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). This Eighth Amendment requirement has been incorporated into the Fourteenth Amendment failure-to-protect analysis. See Schoelch v. Mitchell, 625 F.3d 1041, 1046 (8th Cir. 2010) (citing Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007) (holding that the Fourteenth Amendment's Due Process Clause imposes a duty comparable to the Eighth Amendment's duty to protect inmates from assault by other inmates); Nelson, 603 F.3d at 446-48.

Both in the context of the Eighth and Fourteenth Amendments, the Eighth Circuit relies on Farmer, 511 U.S. at 834, and applies a two pronged test to allegations of a failure-to-protect. See e.g., Schoelch, 625 F.3d at 1046; Nelson, 603 F.3d at 446; Young, 508 F.3d at 872. Under the first prong, the court considers "whether, viewed objectively, the deprivation of rights was sufficiently serious." Nelson, 603 F.3d at 446 (quoting Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008)). To be sufficiently serious a plaintiff must demonstrate "that the official's failure to protect resulted in the inmate being 'incarcerated under conditions posing a substantial risk of serious harm.'" Young, 508 F.3d at 872 (quoting Farmer, 511 U.S. at 834). Under the second prong, "[a]n official is deliberately indifferent . . . if he or she actually knows of the substantial risk and fails to respond reasonably to it." Nelson, 603 F.3d at 446 (quoting Young, 508 F.3d at 873) (alteration in original).

Further, under the second prong, officials must possess a "'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). This "describes a state

of mind more blameworthy than negligence" and "'more than ordinary lack of due care for the prisoner's interests or safety.'" Id. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). To establish liability under a failure to protect theory, it must be shown that the official knew that the inmate/detainee faced a "substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measure to abate it." Id. at 847. Thus, officials cannot be liable for mere negligence in regard to an allegation that they failed to protect an inmate/detainee. Id. at 835. Moreover, officials cannot be held liable if "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844. "In addition, officials who actually knew of a substantial risk to [an] inmate [or detainee's] health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844-45. On the other hand, an official may be denied qualified immunity if he or she "'actually [knew] of the substantial risk and fail[ed] to respond reasonably to it,'" Nelson, 603 F.3d at 446 (quoting Young, 508 F.3d at 873).

It is well established that prisons are inherently dangerous places and that not every instance of inmate-on-inmate violence "translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 at 834. Additionally, the Eighth Circuit has recognized that the risk of violence in prison can never be completely eliminated. See Andrews v. Siegel, 929 F.2d 1326, 1330-31 (8th Cir.1991) ("[S]ome violence in prisons may be unavoidable due to the character of the prisoners") (internal quotations and citations omitted). Thus, "prison officials [are given] 'wide-ranging deference ... to preserve internal order and discipline and to maintain institutional security.'" Jackson v. Everett, 140 F.3d 1149, 1152-53 (8th Cir. 1998) (quoting Falls v. Nesbitt, 966 F.2d 375, 379 (8th Cir.1992)).

9

**A. Nurse Moyers**:

The court will first consider whether Nurse Moyers is entitled to qualified immunity. Plaintiff alleges that he informed Nurse Moyers, on September 9, 2010, of the threats he received from Tucker and told her that he wanted to be transferred out of Hoctor Four. Plaintiff also alleges that, in response, Nurse Moyers told Plaintiff that she would relay the information to Barton, the Hoctor Four Unit Program Supervisor. In his Complaint, Plaintiff acknowledges that Nurse Moyers followed through with this promise and actually spoke with Barton later that day and that Barton "told Nurse Moyers that he would check with administration about moving Plaintiff to another ward. Doc. 1, ¶¶7-8.

Plaintiff does not allege in his Complaint that Nurse Moyers had the authority to move him out of Hoctor Four. Nonetheless, in his Response to the Motion to Dismiss, Plaintiff states that Nurse Moyers had such authority. Doc. 13 at 4. Even assuming, arguendo, that Nurse Moyers had the authority to move Plaintiff out of Hoctor Four, her electing to refer Plaintiff's request to Barton was neither deliberately or recklessly indifferent. See Norman v. Schuetzle, 585 F.3d 1097, 1103 (8th Cir. 2009) ("[W]e cannot say that [a case worker] engaged in unconstitutionally cruel and unusual punishment when he noted the threat in the logbook and contacted his supervisor but did no more."); Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005) (quoting Davis v. Hall, 375 F.3d 703, 711-12 (8th Cir. 2004) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."). Significantly, Plaintiff's Complaint acknowledges that Nurse Moyers contacted Barton on the same day that Plaintiff made his request to be transferred. Under such circumstances Plaintiff does not allege facts sufficient to suggest a constitutional violation on the part of Nurse Moyers. See Farmer, 511 U.S. at 835.

Even assuming that Nurse Moyers knew that Plaintiff's safety was at risk, Plaintiff has alleged facts suggesting that she responded reasonably to such a risk. See Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002) (citing Farmer, 511 U.S. at 847) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent."). Accordingly, by any standard, Plaintiff does not allege facts to suggest that Nurse Moyers acted with deliberate indifference to Plaintiff's transfer request or that her conduct demonstrated either a conscious or reckless disregard to Plaintiff's safety. See Farmer, 511 U.S. at 828; Young, 508 F.3d at 875. In any case, in regard to the injury Plaintiff allegedly suffered as a result of Nurse Moyers's conduct, Plaintiff merely alleges that he suffered "injuries to the left side of his nose," which injuries hardly rise to the level of objectively serious harm. See Schoelch, 625 F.3d at 1046-47 (holding that to establish deliberate indifference an inmate must establish "that he suffered an objectively serious deprivation") and (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992) ("[A] prisoner must show that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation.").[2] See also Ellis v. Bass, 982 F.2d 525, 1992 WL 369484, at *2 (8th Cir. Dec. 16, 1992) (unreported) ("Under these facts, we conclude Ellis has alleged de minimis injury at most, and thus has not satisfied the objective component of an Eighth Amendment claim.") (citing

---

[2] Significantly, Plaintiff's claim arises in the failure to protect context, not an excessive force context, the latter of which would not necessarily require dismissal where the alleged injury is minor. See Schoelch, 625 F.3d at 1047 (quoting Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) ("The objective standard that must be satisfied in a conditions-of-confinement claim differs from that applicable in the excessive force context, where the malicious and sadistic use of force by prison officials always violates "contemporary standards of decency."). See also Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011) ("We are not convinced, however, that evidence of only de minimis injury necessarily forecloses a claim of excessive force under the Fourth Amendment.").

11

Hudson v. McMillian, 112 S.Ct. 995, 999-1000 (1992)). Additionally, Plaintiff does not allege that Tucker injured his nose until approximately five weeks after he requested that he be moved. See Prater v. Dahm, 89 F.3d 538, 542 (8th Cir. 1996) (finding that, even with a history of threats, two weeks without incident was a "sufficient time" for officials to conclude that an inmate was not in danger). As such, Plaintiff does not allege that he was exposed, based on either a subjective or objective standard, to a substantial risk of serious harm. See Farmer, 511 U.S. at 835, 847; Schoelch, 625 F.3d at 1046-47; Nelson, 603 F.3d at 366; Norman, 585 F.3d at 1103; Prater, 89 F.3d at 542. The court finds, therefore, that Nurse Moyers is entitled to qualified immunity; that Plaintiff has failed to state a cognizable claim against Nurse Moyers in her individual capacity; and that Defendants' Motion to Dismiss should be granted to the extent it seeks to have Nurse Moyers dismissed. See Twombly, 550 U.S. at 555-56.

**B.     Unit Manager Jordan and Unit Program Supervisor Barton**:

Next the court will consider whether Jordan and Barton are entitled to qualified immunity. In regard to Jordan's failure to move Plaintiff, Plaintiff's Complaint alleges only that Barton told Nurse Moyers he would check with "administration" regarding the request and that Jordan "had prior knowledge of the assault and failed to prevent it." Doc. 1 at 4. In his Response, Plaintiff adds that Jordan receives a daily report from the wards and would have learned of Tucker's threats through these briefings. Doc. 13 at 5. In addition, Plaintiff states that Jordan was generally aware that Tucker had assaulted Plaintiff in the past and that Jordan was aggressive, violent, "capable of doing serious bodily harm to other residents," and known "'to 'carry out' his threats." Id. at 4-5. In regard to Barton, Plaintiff alleges that he had actual knowledge of Plaintiff's request that he be moved. Giving Plaintiff the benefit of a liberal reading of his pleadings, the court will assume that Plaintiff alleges that

Jordan and Barton each possessed either actual or constructive knowledge of the potential danger that Tucker posed to Plaintiff, yet failed to respond appropriately under the circumstances.

In support of his position that Jordan and Barton should not be granted qualified immunity, Plaintiff directs the court to the Eighth Circuit's decision in Nelson, in which case the court affirmed the denial of summary judgment based on qualified immunity. See Nelson, 603 F.3d at 447. Nelson, however, involved a set of highly extreme circumstances distinguishable from Plaintiff's allegations in the matter under consideration. First, the plaintiff in Nelson was sexually assaulted unlike Plaintiff who asserts only that he received an injury to one side of his nose. Second, the plaintiff in Nelson was assigned to share a room at a treatment facility with the attacker, who was a highly volatile sex offender with a long history of sexual misconduct, including raping of a prison cell mate. 603 F.3d at 443-44. Plaintiff does not allege that he roomed with Tucker. Third, the attacker in Nelson had spent the majority of his original prison sentence in administrative isolation; had incurred fifteen "intolerable violations" within a month of arriving to the treatment facility which led staff to place him in restraints and protective isolation; had once incurred twenty-one misconduct violations in a single day two months before the attack, and at least sixteen misconduct violations only one week later; and had spent the better part of those next two months in protective isolation, physical restraints, or "Total Ward Restriction" because of his violent and sexual conduct. Id. at 443-44, 447. Plaintiff alleges only that Tucker received two conduct violations and that Tucker verbally threatened Plaintiff an unspecified number of times in the five week period between when Plaintiff asked to be moved and when Tucker injured the side of his nose. Doc. 1, ¶¶ 14, 19. Although Plaintiff alleges that Tucker had a "history of assaultive behavior toward other residents" and staff, Plaintiff makes only a general allegation in this regard, failing to specify the nature and/or dates of such conduct. Doc. 1, ¶¶ 19, 20. Plaintiff's

13

allegations regarding Tucker's past conduct do not rise above the level of speculation. See Twombly, 550 U.S. at 55-56. Significantly, a propensity for being problematic, by itself, cannot establish the subjective awareness necessary for a failure-to-protect claim. See Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003) ("Defendants only possessed an awareness of [the inmate's] propensity for being a problematic inmate; to find Defendants sufficiently culpable would unduly reduce awareness to a more objective standard, rather than the required subjective standard set by the Supreme Court.").

As discussed above, Plaintiff acknowledges, in his Complaint, that he and Tucker remained on the same ward for over five weeks after Tucker's September 9, 2010 threat without Tucker's injuring him. See Prater, 89 F.3d at 542. Officials are not required to adjust rooming arrangements for detainees after every unsubstantiated threat. See id. at 541 ("[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."). Involuntary detention centers, whether civil or criminal, are prone to more violent behavior than the outside world, and, as a result, courts "must give substantial deference to prison officials to determine the best methods for dealing with dangerous inmates in the volatile environment that is prison life." Norman, 585 F.3d at 1105, 1107 ("[P]rison officials [] are given 'wide-ranging deference to preserve internal order and discipline and to maintain institutional security.'") (quoting Jackson v. Everett, 140 F.3d 1149, 1152-53 (8th Cir. 1998)).

As stated above, Plaintiff does not allege that he and Tucker were roommates; he merely alleges that they resided in the same ward. Confining a targeted detainee with a potential aggressor in close quarters overnight is more cause for concern than housing the detainees in the same general area of a facility. See Curry v. Crist, 226 F.3d 974 (holding that the warden not liable for allowing

14

convicted multiple murderer into general population following good behavior even after threat of mass murder). Plaintiff's housing arrangement, as alleged in his Complaint, lacks the element of imminence implicit in cases where an inference of a substantial risk has been found. See, e.g., Nelson, 603 F.3d 439 (rooming a predatory detainee with another detainee fitting his historical profile of his victims); Whitson v. Stone County Jail, 602 F.3d 920 (8th Cir. 2010) (placing a female prisoner in a caged van with male prisoner); Young, 508 F.3d 868 (plaintiff threatened by roommate with gang retaliation immediately after they were assigned to the same cell); Irving, 519 F.3d 441 (opening cell doors to enable inmate to attack plaintiff); Kahle, 477 F.3d 544 (8th Cir. 2007) (male guard visiting female inmate's cell three times in an hour after lockdown).

As discussed, five weeks elapsed between the time Plaintiff allegedly asked to be moved and when he received the injury to the side of his nose. See Prater, 89 F.3d at 542. In regard to Tucker's conduct during the five weeks between the date Plaintiff asked to be moved and when his nose was injured, Plaintiff only alleges that Tucker received two conduct violations and that he verbally threatened Plaintiff. To the extent Plaintiff ultimately was injured by Tucker, Plaintiff alleges merely that the side of his nose was injured. See Schoelch, 625 F.3d at 1046-47. As such, Tucker's conduct suggests that the potential risk which Plaintiff faced, based on either a subjective or an objective standard, was not sufficiently serious for purposes of finding that Jordan and/or Barton were deliberately indifferent or that they acted with either a conscious or reckless disregard for Plaintiff's safety. See Nelson, 508 F.3d at 547. Furthermore, Plaintiff does not allege facts to suggest that either Jordan's or Barton's allegedly failing to protect him resulted in his being confined under conditions which posed a substantial risk of serious harm. See Young, 508 F.3d at 872. Even assuming, based on Plaintiff's pleadings, that Jordan and/or Barton knew of Plaintiff's request to be moved, knew that

15

Tucker had made verbal threats to Plaintiff, and knew that Tucker had made threats to others in the past, Plaintiff's Complaint fails to allege that Jordan and/or Barton were either recklessly or deliberately indifferent to or consciously disregarded a substantial risk that Plaintiff would be subjected to serious harm. Nelson, 603. F.3d at 446. The court finds, therefore, that Plaintiff has failed to allege facts which reasonably and plausibly suggest a violation of a constitutional right by either Jordan or Barton; that, under such circumstances, Jordan and Barton are entitled to qualified immunity; and that Defendants' Motion to Dismiss should be granted in that regard. See Twombly, 550 U.S. at 555-56; Farmer, 511 U.S. at 828-34; Schoelch, 625 F.3d at 1046-47; Nelson, 603 F.3d at 366; Norman, 585 F.3d at 1103; Prater, 89 F.3d at 542.

## CONCLUSION

The court finds that Plaintiff has failed to allege facts which affirmatively and plausibly suggest that he has a cause of action against Defendants in their official capacities. Additionally, the court finds, based on the allegations of Plaintiff's Complaint, that Defendants are entitled to qualified immunity in regard to claims against them in their individual capacities. The court finds, therefore, that Defendants' Motion to Dismiss should be granted in its entirety. Doc. 11.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of July, 2011.